IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

ROSA MERCED ALVARADO, et. al.,

Plaintiffs,

v.

KARILYN BONILLA COLON, et. al.,

Defendants.

CIVIL NO. 13-1787 (PAD)

# REPORT AND RECOMMENDATION

## INTRODUCTION

Plaintiffs in the present case are nine (9) present and former career employees of the Municipality of Salinas who seek declaratory and injunctive relief, back pay, front pay as well as compensatory and punitive damages stemming from allegedly politically motivated actions by Defendants, which resulted in their transfers, demotions and deprivation of duties in violation of their First Amendment Rights. Defendants are the Municipality of Salinas, its Mayor Karilyn Bonilla Colón ("Bonilla"), and Estrella Martínez Soto ("Martínez"), its Human Resources Director. Defendants Bonilla and Martínez are members of the Popular Democratic Party ("PPD"), who defeated the New Progressive Party ("NPP") incumbent mayor in the 2012 elections.

Defendants now move for summary disposition of all claims, asserting that Plaintiffs have failed to meet the four (4) pronged test for political discrimination, and further, that the Mt. Healthy[1] and so called "changeover" defenses cover their actions. They also claim they are entitled to the qualified immunity defense. (Docket No. 113). Before the Court are also Plaintiffs' opposition thereto (Docket No. 129); Defendants'

---

[1] Mt. Healthy City Bd. of Educ. v. Doyle, 429 U.S. 274, 287, 97 S.Ct. 568 (1977).

Reply to Plaintiffs' Opposition (Docket No. 150) and Plaintiffs' Sur-Reply thereto (Docket No. 150).

On September 26, 2016, the presiding District Judge referred Defendants' Motion for Summary Judgment to the undersigned for a Report and Recommendation. (Docket No. 121). For the reasons explained below, it is recommended to the Court that Defendants' Motion for Summary Judgment be GRANTED IN PART and DENIED IN PART.

## STANDARD

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56 (c). Pursuant to the language of the rule, the moving party bears the two-fold burden of showing that there is "no genuine issue as to any material facts," and that he is "entitled to judgment as a matter of law." Vega-Rodríguez v. Puerto Rico Tel. Co., 110 F.3d 174, 178 (1st Cir. 1997).

After the moving party has satisfied this burden, the onus shifts to the resisting party to show that there still exists "a trial worthy issue as to some material fact." Cortés-Irizarry v. Corporación Insular, 111 F.3d 184, 187 (1st Cir. 1997). A fact is deemed "material" if it potentially could affect the outcome of the suit. Id. Moreover, there will only be a "genuine" or "trial worthy" issue as to such a "material fact," "if a reasonable fact-finder, examining the evidence and drawing all reasonable inferences helpful to the

party resisting summary judgment, could resolve the dispute in that party's favor." Id. At all times during the consideration of a motion for summary judgment, the Court must examine the entire record "in the light most flattering to the non-movant and indulge all reasonable inferences in the party's favor." Maldonado-Denis v. Castillo-Rodríguez, 23 F.3d 576, 581 (1st Cir. 1994).

The First Circuit Court of Appeals has "emphasized the importance of local rules similar to Local Rule 56 [of the District of Puerto Rico]." Hernández v. Philip Morris USA, Inc., 486 F.3d 1, 7 (1st Cir. 2007); *see also*, Colón v. Infotech Aerospace Servs., Inc., 869 F.Supp.2d 220, 225-226 (D.P.R. 2012). Rules such as Local Rule 56 "are designed to function as a means of 'focusing a district court's attention on what is -and what is not- genuinely controverted.' " Calvi v. Knox County, 470 F.3d 422, 427 (1st Cir. 2006)). Local Rule 56 imposes guidelines for both the movant and the party opposing summary judgment. A party moving for summary judgment must submit factual assertions in "a separate, short, and concise statement of material facts, set forth in numbered paragraphs." Loc. Rule 56(b). A party opposing a motion for summary judgment must "admit, deny, or qualify the facts supporting the motion for summary judgment by reference to each numbered paragraph of the moving party's statement of facts." Loc. Rule 56 (c). If they so wish, they may submit a separate statement of facts which they believe are in controversy. Facts which are properly supported "shall be deemed admitted unless properly controverted." Loc. Rule 56(e); P.R. Am. Ins. Co. v. Rivera-Vázquez, 603 F.3d 125, 130 (1st Cir. 2010) and Colón, 869 F.Supp.2d at 226. Due to the importance of

this function to the summary judgment process, "litigants ignore [those rules] at their peril." Hernández, 486 F.3d at 7.

## LEGAL ANALYSIS

### A. *Prima facie* case - political discrimination.

A *prima facie* case of political discrimination based on the First Amendment must establish the following four (4) elements: "(1) that the plaintiff and defendant have opposing political affiliations; (2) that the defendant is aware of the plaintiff's affiliation; (3) that an adverse employment action occurred; and (4) that political affiliation was a substantial or motivating factor for the adverse employment action." Lamboy-Ortíz v. Ortíz-Vélez, 630 F.3d 228, 239 (1st Cir. 2010); Martínez Vélez v. Rey Hernández, 506 F.3d 32, 39 (1st Cir. 2007).

Once the plaintiff clears this hurdle, the defendant may then rebut that showing with what is commonly referred to as the Mt. Healthy defense. The defendant must prove, by a preponderance of the evidence, that "the governmental agency would have taken the same action against the employee even in the absence of the protected conduct." Díaz-Bigio v. Santini, 652 F.3d 45, 52 (1st Cir. 2011) (*quoting* Guilloty Pérez v. Pierluisi, 339 F.3d 43, 51 (1st Cir. 2003)). Once the defendant proffers a nondiscriminatory reason for the adverse employment action, the plaintiff then has a chance to discredit said reason "by adducing evidence that discrimination was more likely than not a motivating factor." Reyes Canada v. Rey Hernández, 286 F. Supp. 2d 174, 178 (D.P.R. 2003) (*quoting* Padilla-García v. Rodríguez, 212 F.3d 69, 78 (1st Cir. 2000)).

Rosa Merced Alvarado, et al., v. Karilyn Bonilla Colón, et al.
Civil No. 13-1787 (PAD)
Report and Recommendation
Page 5
_____

      Defendants first posit that Plaintiffs cannot meet the threshold for political discrimination, insofar as they cannot establish that Defendants knew of their political affiliation. Defendants also deny Plaintiffs suffered an adverse employment action and further aver that Plaintiffs cannot establish that political affiliation was a substantial or motivating factor for the challenged actions. None of the Plaintiffs, except for Plaintiff Karla Rodríguez Rosado ("Rodríguez"), was dismissed. Instead, they were transferred to other Municipal divisions.

      Defendants make a separate argument for the dismissal of Rodríguez' claims arguing that her reinstatement to a career position, after occupying her appointed (or trust) position, was invalid because she failed to complete the required probationary period or, in the alternative, she did not compete for the position she was reinstated to.

      The Court has carefully examined the Motion for Summary Judgment and related pleadings, including the voluminous uncontested facts and documentation submitted by both parties. Defendants submitted one hundred and thirty one (131) pages of facts (with differing sections and numbers), while Plaintiffs submitted two hundred and fifty four (254) additional facts of their own. The large number of uncontested facts submitted by both parties, on its own, clearly evidences that contested issues of material fact are in controversy in this case, as it is a classic "he said/she said" situation. As such, the instant case cannot be properly resolved at the summary judgment stage.

      Just to name a few of the material issues of fact in controversy, Defendants proffer that "[w]ith the exception of plaintiff Karla Rodríguez Santiago, Mayor Bonilla Colón

never saw any of the other plaintiffs campaigning for the New Progressive Party during the 2012 election campaign. Exhibit 1H, Bonilla Statement at pp.1, 3-7, ¶¶ 7, 16, 24, 32, 40, 48, 56". Plaintiffs counter this assertion with "Denied. The political campaigns of the NPP's and the PPD's did in fact cross paths, and plaintiffs coincided with Mayor Bonilla in the campaign trail. SAUMF 135, 154, 155, 168- 169, 217-220."

Another example of a material issue of fact in controversy is when Defendants state: "Mayor Bonilla Colón did not know Isis Correa Carbonell by name or have any interactions with her before Mayor Bonilla Colón became Mayor of Salinas in 2013. Mayor Bonilla Colón believes that she had seen Ms. Correa Carbonell's face prior to becoming Mayor around the Municipality, maybe at a baseball game in the crowd sitting in the same area of the baseball park, but Mayor Bonilla Colón did not know Ms. Correa Carbonell's name at that time and would not have been able to put a name with Ms. Correa Carbonell's face" . Exhibit 1H, Bonilla Statement at pp. 2-3, ¶ 14. Plaintiffs respond with: "Denied. Mayor Bonilla knew who Isis Correa was prior to assuming office and Mayor Bonilla is aware of Correa's political affiliation to the NPP and is also aware that Plaintiff Correa was the secretary to the outgoing NPP Mayor Rodríguez Mateo, and that she worked side by side with the NPP Mayor at the Mayor's office. SAUMF 135-136".

Yet another example of the factual record in this case is when Defendants submit that: "Mayor Bonilla Colón did not know the political affiliation of Camille Torres González when Mayor Bonilla Colón became Mayor of Salinas in 2013. Exhibit 1H, Bonilla Statement at p. 6, ¶ 47". Plaintiffs respond with: "Qualified. Bonilla is aware of plaintiff

Torres' political affiliation who is very open about her political activism, has actively campaigned for the NPP, represented the NPP in electoral colleges and the municipal employees are aware of this activism and they know the political affiliation of fellow employees. Also, Bonilla's human resources Director, defendant Martinez Soto, admitted to knowing Torres' political affiliation. SAUMF 191, 197-201."

Defendants also posit that "Ms. Rodriguez said she has a claim of political discrimination against Mayor Bonilla because she was fearful of working at the Coco electronic library at night until it closed at 9 PM, but she admitted that she doesn't know if the Mayor had personal knowledge of this either. Exhibit 17, 186:20 through 187:5.". Plaintiffs proffer in opposition thereto: "Denied. As evidenced on page 186, ln. 12-14, of Defendant's Exhibit 17, plaintiff testified that she notified in writing to Mayor Bonilla of her situation at the Coco electronic library and her fear working there at night and Mayor Bonilla admitted to knowing about the contents of plaintiff's letters. See paragraphs 23 and 24."

Furthermore, Defendants' proffered statement for each of the Plaintiffs, stating that "Mayor Bonilla Colón did not take any actions against [Isis Correa Carbonnell] on the basis of her political affiliation or political beliefs" (Docket Nos. 114, ¶¶ 63, 74, 91, 117, 126, 151, among others) is a self-serving statement which does little to help their defense as that is precisely the issue at the heart of this case.

A review of the record in this case demonstrates that it is filled with these instances. In fact, Plaintiffs opposed almost all of Defendants' proffered facts, making it impossible

to grant a motion for summary judgment in this case.

Additionally, notwithstanding Defendants' denials, Plaintiffs have brought forth evidence of their previous publicly known NPP affiliation, such as: participating in political motorcades; placing placards in front of their yards; that once transferred, they lacked duties to perform and whatever few duties they were given were not consistent with their job descriptions; and a lack of supplies and equipment.  While the claims presented by each Plaintiff vary, a generous reading of the record shows that material facts are in dispute as to what was known, and by whom.   Under this scenario, a jury is entitled to evaluate these actions and determine what, if anything, Defendants knew and whether or not they acted with discriminatory animus.

The Court's conclusion to recommend denial of summary judgment for the political discrimination claims becomes particularly evident when one considers that Defendants' motivation regarding the actions undertaken has been called into question, the resolution of which requires the weighing the facts and credibility by the jury.  See Orraca Figueroa v. Torres Torres, 288 F.Supp.2d 176, 185 (D.P.R. 2003). ("The key component of a political discrimination defense for any type of employee, whether he be career, regular, irregular or transitory, is a lack of discriminatory animus by the Defendants, which is a question of fact proper only for a jury to decide").   Whether or not that animus was present when Defendants undertook the actions in question in this case will be up to the jury to decide.

### B. Changeover, Mt. Healthy, and Qualified Immunity Defenses.

The same reasoning stated above applies to Defendants' changeover, Mt. Healthy, and qualified immunity defenses.

The "changeover defense" "refers to a new administration's claim that challenged actions taken reasonably soon after the 'changeover' in power were designed to advance its First Amendment-related interest in implementing its policies." Berríos-Cintrón v. Cordero, 976 F. Supp. 110, 117 (D.P.R. 1997). It deals with expected changes early into a new administration's tenure of governance, which are made in order to best accomplish its policy goals. "The new administration may substantially reorganize the structure of one or more departments, it may readjust departmental priorities, or it may initiate early new procedures for carrying out its functions. The changeover in government is thus likely to produce substantial alterations in certain employee's jobs not because those employees are members of the outgoing party but because the incoming party, as a matter of policy, does not view those jobs to be important". Id. It is basically a justification for the Municipality's actions.

Regarding Mt. Healthy, assuming *arguendo* that Plaintiffs have proven their political discrimination claims, Defendants posit that they would have legally taken the actions they undertook anyway, as the Municipality was in a financial crisis and they lacked funds. This is the same argument underpinning Defendants' changeover defense.

Plaintiffs, however, have presented credible evidence that the Municipality failed to undertake any efforts to reduce the payroll, implement a layoff plan, and/or reduce

expenditures. The fact that the Municipality was able to obtain a loan from the Government Development Bank ("GDB") and an advanced payment by the CRIM after Mayor Bonilla took office further casts doubt on these proffered reasons. Finally, Plaintiffs have established that there were no vacancies in the areas that they were transferred to, further casting doubt on Defendants' excuse for their transfers, to wit, lack of funds and the need of service. Again, these are all factual matters that are only proper for a jury to resolve.

Defendants submit audit reports from the Puerto Rico Comptroller's office dated January 2016 in order to meet their Mt. Healthy burden. In said report, the Comptroller finds a number of deficiencies that Defendants argue sustain their lack of funds defense. The results of this audit, however, were not rendered until January 2016, some three (3) years after the time the events that gave rise to this cause of action occurred. Therefore, the audit cannot be used to substantiate Defendants' reasoning for their actions at the time they undertook them. Once again, although Defendants have argued that the Municipality was in dire financial condition and have brought forth some evidence to that effect, their defense rings hollow when one considers that the Municipality failed to undertake any efforts to reduce the payroll, transferred Plaintiffs to dependencies where there were no vacancies, gave them little or no duties to perform, failed to implement a layoff plan, and/or reduce expenditures and was able to obtain funding from the GDB, among others. Making all inferences in favor of the non-moving party, as the Court must at this stage, it finds there are issues of material fact surrounding Plaintiffs' transfers

which must be resolved by a jury.

Regarding the qualified immunity defense, it has been established that where there is a controversy of material fact, denial of qualified immunity is proper. See Caro v. Aponte-Roque, 878 F.2d 1 (1st Cir. 1989) and Orraca Figueroa, 288 F.Supp.2d at 186-87. As previously mentioned, the record shows that there are too many material facts in controversy that prevent the Court from granting summary disposition of Plaintiffs' claims. However, Defendants are free to raise the qualified immunity defense again at trial, where the Court will resolve the issue of qualified immunity after the return of a verdict.

In line with the above, it is recommended to the Court that Defendants' Motion for Summary Judgment, as to the political discrimination claims, be DENIED.

### C.  Plaintiff Karla Rodríguez Rosado.

The case of Plaintiff Rodríguez, however, is different.   While this Plaintiff, like the others, has established that Defendants were aware of her past political dealings with the NPP, Defendants' Mt. Healthy defense against her claims is premised on different grounds, to wit, that her original reinstatement to a career position upon termination of her appointed position was null and void, as she failed to comply with the probationary period.   Furthermore, she did not compete for her position pursuant to the merit system.

The Autonomous Municipalities Act requires that, "[t]he municipal public service shall be governed by the merit principle to ensure that those who serve the Municipal Government are the fittest."   P.R. Laws Ann., tit. 21 §4551.   It also specifies procedures

for hiring "career" employees. A Municipal Selection Committee interviews all eligible candidates, submits a list to the Mayor of the five most qualified candidates, and the Mayor makes the final selection. P.R. Laws Ann., tit. 21 §4558. This is what is called recruitment pursuant to the merit principle.

Once the recruitment process is complete, it is well settled that under Puerto Rico law in order for a probationary employee to become a career employee the substantive requirements of the probationary period must have been met. See P.R. Laws Ann., tit. 3 § 1462b(3)(g) ("Upon satisfactorily completing the probation period, the employee shall become a regular career employee"); Zambrana v. González, 145 D.P.R. 616, 632-33 (1998) ("The satisfactory completion of the probationary period is one of the most important stages of the recruiting process"); Gierbolini Colón v. Aponte Roque, 666 F.Supp. 334, 337 (D.P.R. 1987) ("[plaintiff] was a probationary employee until the last evaluation on that probation was finished and a decision on whether he satisfactorily completed the period was made." "Upon satisfactory completion of the probationary period the employee shall become a regular career employee.")

Once an employee completes the recruitment process and the probationary period, it is at that moment when Puerto Rico law grants a property interest to that career employee in his or her employment. See Kauffman v. Puerto Rico Tel. Co., 841 F.2d 1169, 1173 (1st Cir. 1988). The Autonomous Municipalities Act mandates that career employees "shall be entitled to permanent status and may only be removed from their positions for just cause after due filing of charges." P.R. Laws Ann., tit. 21 § 4554(b).

However, in order to possess a protected interest, a plaintiff must have a valid claim to career status. Puerto Rican law mandates that "[a]cts executed contrary to the provisions of law are void except when the law preserves their validity." P.R. Laws Ann. tit. 31, § 4; Figueroa-Serrano v. Ramos-Alverio, 221 F.3d 1, 6 (1st Cir. 2000).

Even accepting as true that Plaintiff Rodríguez can evidence a *prima facie* case, she has failed to show that she competed for the position pursuant to the merit principle ("recruitment and selection"). She has further failed to demonstrate that she completed the probationary period required under the law of six (6) months.

The official Human Resources records for the Municipality state that Plaintiff Rodríguez began working for the Municipality on January 20, 2005, in a temporary position as an Administrative Assistant. This is an important distinction to note because pursuant to municipal records and Puerto Rico law, a temporary position falls under the category of an irregular appointment, which is defined as one that "include[s] those functions of an unforeseen, temporary, or intermittent type, whose nature and duration do not justify the creation of permanent positions and whose compensation is conveniently paid in wages, by the day or by the hour." P.R. Laws Ann., tit. 21 § 4553. It is therefore different from a regular employee on probationary status. Plaintiff Rodríguez remained a temporary employee until April 16, 2005, when she assumed probationary status. On July 1, 20105, she was appointed to career status.

Defendants posit that the countdown to career status began when she became a probationary employee on April 16, 2005. Under this scenario, her probationary status

would have ended on October 16, 2005. Clearly, she did not meet the (six) 6 month requirement. And, as would be expected, Municipal records show that a temporary position is distinct and different from a probationary appointment. Thus, Rodríguez' temporary assignment cannot be counted towards her probationary period. Even assuming, however, that the Court should count the time she spent as a temporary employee, she would still come up short, insofar as she would have only been an employee for five (5) months and twenty (20) days.

Plaintiff Rodríguez counters this math with the allegation that she actually ended her probationary period on July 30 and not June 30, and the Municipality's records are incorrect. Rodríguez also avers that the documents that evidence this are "missing" from the files of the Municipality, which would show she complied with the probationary period. Yet, Rodríguez did not provide copies of the allegedly missing documents, did not identify said documents or presented evidence that they, in fact, existed. Unfortunately, more is needed at this stage besides Plaintiff's self-serving word. See Garside v. Osco Drug, Inc., 895 F.2d 46 (1st Cir. 1990) ("We have repeatedly held that, while notice pleading is sufficient to open the federal courthouse door, a party opposing a motion for summary judgment, properly put, may not ask the court to try the case in order to determine the facts); Castro-Medina v. Procter & Gamble Commercial Co., 565 F.Supp.2d 343 (D.P.R. 2008) ("However, we note that the only evidence she provides in support of these conclusory allegations is her own deposition testimony, without any explanation or reference to evidence. 'Summary judgment cannot be defeated by relying

Rosa Merced Alvarado, et al., v. Karilyn Bonilla Colón, et al.
Civil No. 13-1787 (PAD)
Report and Recommendation
Page 15
_____

on such conclusory allegations.' "(*quoting* Ríos-Jiménez v. Principi, 520 F.3d 31, 42 n. 7 (D.P.R. 2008)).   Finally, Plaintiff Rodríguez' submittal of her payment stubs, in an attempt to evidence that she complied with the probationary period, is likewise unavailing.  The payment stubs do not show the positions she held while she was being paid.

If more is needed, an independent hearing examiner arrived at the same conclusion upon examining the documentation in question, to wit, that Plaintiff Rodríguez had failed to meet the probationary period and that she did not comply with the recruitment component of the law.  See D. Exhibit 1-I.  This is an independent source that further corroborated that the legal requirements were not met when Plaintiff Rodríguez began to work at the Municipality and is an independent ground to sustain Defendants' Mt. Healthy defense as to Plaintiff Rodríguez.

Plaintiff Rodríguez counters Defendants' reasoning for her dismissal with the case of Santiago Negrón v. Castro Dávila, 856 F.2d 431 (1st Cir. 1989), to stand for the proposition that, even if her appointment was illegally made, she still cannot be dismissed under the First Amendment.  The Court finds this is incompatible with the law, and the case's factual scenario varies greatly from this one and is, thus, easily distinguishable, for substantially the same reasons proffered by Defendants at Docket No. 150.  "Santiago-Negron involved an appeal of a jury verdict in favor of seven plaintiffs in which defendants on appeal did not appeal 'the jury findings that the plaintiffs were fired or demoted and discriminated against solely because of their political affiliation.' (citation omitted).

That case also involved 'uncontradicted testimony' at trial that the personnel laws were largely not observed in the Municipality of Las Piedras, (citation omitted), such that the employees there were being singled out for political reasons, when many other appointments not questioned would have had similar deficiencies. Plaintiffs have not made such argument here and have presented no evidence in the summary judgment record which could substantiate it. Thus the language in Santiago-Negrón, cited by Plaintiffs in the Opposition at p. 4 that a new administration could not use the nullity of appointments doctrine 'as a cover for discharges, transfers and discrimination **based solely on political affiliation**.' (emphasis added), has no applicability here where none of the underlying factual bases for such precedent to apply here have been established".

Indeed, the First Circuit explicitly stated in Santiago Negrón that "[i]t is true that the words "null and void" and "null *ab initio*" are used in the opinions, but the meaning of these phrases must be derived from the context of the case in which they are used. They do not have a life of their own and cannot be transferred bodily to a situation involving different facts." Santiago-Negrón, 865 F.2d at 435-36. The Court finds that Santiago Negrón is inapposite inasmuch as the factual scenario in the case of caption is drastically different from the factual scenario of said case.

Now that Defendants have proffered a legitimate, non-discriminatory reason for their actions, it was Plaintiff Rodríguez' burden to bring forth evidence that discrimination was more likely than not a motivating factor in her dismissal. Rodríguez has failed to do so. Specifically, she has failed to bring any evidence to rebut the nullity

of her appointment and cannot oppose summary judgment with only her word that Human Resources got her probationary period date wrong, that the documents existed but disappeared from her file (she has no copies of the documents), and that, in spite of the nullity of her appointment, the real reason for her dismissal was politically motivated. The Court simply cannot make that leap absent any rebuttal evidence.

In accordance with the above, it is recommended to the Court that Defendants' Motion for Summary Judgment, as to the claims brought by Plaintiff Karla Rodríguez Santiago, be GRANTED and her claims be DISMISSED WITH PREJUDICE.

### D. Section 1983.

Defendants finally posit that the claims brought against the Municipality must be dismissed, insofar as municipal liability cannot attach under Section 1983. Defendants aver that "[i]n order to impose liability to the Municipality of Salinas, plaintiffs must demonstrate that the alleged constitutional violations, even if they were committed by municipal employees, were made pursuant to an official policy or custom, and not merely because the Municipality was the employer of co-defendants, which the summary judgment record demonstrates that the plaintiffs have failed to do". (Docket No. 114, p. 40).

In Cordero v. De Jesús-Méndez, 867 F.2d 1 (1st Cir. 1989), the First Circuit made clear, citing to the Supreme Court's holding in Pembaur v. City of Cincinnati, 475 U.S. 469, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986), that "municipality liability under § 1983 attaches where ... a deliberate choice to follow a course of action is made from among

various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." Cordero, 867 F.2d at 8. The Cordero Court also noted that mayors in Puerto Rico are the government officials ultimately responsible for the employment decisions of the municipality, and thus, for establishing final policy. ("More importantly, where action is directed by those who establish governmental policy, the municipality is equally responsible whether that action is to be taken only once or to be taken repeatedly"). Id.; see also Rivera-Torres v. Ortiz Vélez, 341 F.3d 86, 103 (1st Cir. 2003).

Co-Defendant Bonilla, as the Mayor of Salinas, was the ultimate policy making authority and too many answers remain in question as to what was known, and by whom. Thus, making all inferences in favor of Plaintiffs at this stage, a reasonable jury could find that the actions here were made pursuant to an official policy or custom, since all actions took place after co-Defendant Bonilla took office and during her tenure as Mayor. But of course, this is a factual matter for the jury to decide, and improper for the Court to rule upon at this stage.

Accordingly, it is recommended to the Court that Defendants' Motion for Summary Judgment as to the Section 1983 claims be DENIED.

## CONCLUSION

For all the aforementioned reasons, it is recommended to the Court that Defendants' Motion for Summary Judgment (Docket No. 113) be GRANTED IN PART and DENIED IN PART. Specifically, that Defendants' Motion for Summary Judgment

as to claims filed by Plaintiff Karla Rodríguez Santiago be GRANTED; and DENIED as to all remaining claims.[2]

IT IS SO RECOMMENDED.

The parties have fourteen (14) days to file any objections to this report and recommendation. See Amended Local Rules. Failure to file same within the specified time waives the right to appeal this order. Henley Drilling Co. v. McGee, 36 F.3d 143, 150-151 (1st Cir. 1994); United States v. Valencia, 792 F.2d 4 (1st Cir. 1986) and Paterson-Leitch Co. v. Mass. Mun. Wholesale Elec. Co., 840 F.2d 985, 991 (1st Cir. 1988).

In San Juan, Puerto Rico, on this 24th day of January, 2017.

S/CAMILLE L. VELEZ-RIVE
CAMILLE L. VELEZ RIVE
UNITED STATES MAGISTRATE JUDGE

---

[2] On a final note, the Court must mention the voluminous nature of the documents submitted in this case at the dispositive motion stage. Literally, thousands of sheets of paper were submitted, between motions and exhibits, for a case of nine (9) Plaintiffs. While the Court commends the parties for the thoroughness of their work and their zealousness in defending their respective clients, political discrimination cases are oftentimes difficult to dismiss at the summary judgment stage, for all the reasons espoused herein. This case is no different. Even with what would seem like a meritorious case for Plaintiffs, and the valid defenses that Defendants have raised (the parties should not understand this to mean that the Court has any opinion on the ultimate outcome of the case), the Court finds that the sheer amount of paperwork submitted is excessive in light of the claims presented.